# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ALEJANDRO TORRES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | 05 C 45 |
| | ) | |
| T.G.I. FRIDAY'S, | ) | |
|     Defendant/Third-Party Plaintiff | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| FACILITEC, INC., | ) | |
|     Third-Party Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Alejandro Torres was employed by third-party defendant Facilitec. T.G.I. Friday's hired Facilitec to perform maintenance at its Batavia restaurant. Mr. Torres thus arrived at the Batavia T.G.I. Friday's on August 20, 2003, and injured himself while he was cleaning a fryer hood. He ultimately obtained workers' compensation benefits from Facilitec and then sued T.G.I. Friday's in the Circuit Court of Cook County, contending that T.G.I. Friday's negligence caused his accident. T.G.I. Friday's removed the case to this court based on diversity and filed a third-party complaint against Facilitec for contribution in the event that T.G.I. Friday's was found liable. T.G.I. Friday's motion for summary judgment is before the court. For the following reasons, the motion is granted.

## I.  Background

The following facts are undisputed unless otherwise noted. On August 20, 2003, Mr. Torres arrived at the T.G.I. Friday's restaurant in Batavia. He was there in his capacity as a service technician for Facilitec, which had contracted with T.G.I. Friday's to perform

maintenance. Lester Paul Stuart was Mr. Torres' "team lead" or supervisor. Mr. Stuart's duties with Facilitec including inspecting the restaurant, including the exhaust system, to make sure the area was safe prior to cleaning. Mr. Stuart and Mr. Torres were both at the Batavia T.G.I. Friday's during the evening of August 20, 2003.

Once the restaurant closed for the night, the employees of T.G.I. Friday's left and Mr. Stuart inspected the kitchen. The deep-fry device in the kitchen has an exhaust hood which, among other things, provides light due to the five light bulbs covered by glass globes which are located inside the fryer hood. At Mr. Stuart's deposition, he testified that in the course of inspecting the kitchen, he looked underneath the hood of the fryer and noticed that a glass globe over one of the light bulbs was cracked. Stuart Dep. at pp. 25-36. He believes that he noted the crack on his check-in inspection sheet, *id*. at p. 26, but the actual check-in sheet used on the date of the accident, which contains an area asking about any problems with the hood lights, does not appear to have been submitted to the court.[1]

The evidence regarding the condition of the globe at the time of the inspection (*i.e.*, whether it was cracked or broken) is disputed. Prior to the accident, Mr. Stuart "remember[ed] saying something to him [Mr. Torres] about it [the cracked globe]," *id*. at 27. On the other hand, Mr. Torres disputes that Mr. Stuart saw that the globe was cracked during the inspection. In support, he notes that Mr. Stuart did not say anything when he looked under the hood. Torres Dep. at pp. 29, 31-32. Mr. Torres also testified that after he cut himself, Mr. Stuart told him that

---

[1] Instead, the record contains check-in sheets for other dates as well as a completely illegible check-in sheet. *See* Ex. B to Torres' additional facts. The court assumes that the check-in sheet for the night of the accident was lost. Regardless, it is not in the record so it is not properly before the court for purposes of the summary judgment motion filed by T.G.I. Friday's.

when T.J.I. Friday's was doing inventory to establish what maintenance work needed to be performed, the globe must have been "broken." *Id*. at p. 43-45. In addition, Mr. Torres testified that after the accident, Mr. Stuart looked up into the hood "and that's when he noticed that the light bulb was busted." *Id*. at p. 44.

The court next turns to the events in the kitchen after the inspection. Mr. Stuart changed the filter in the hood and he and Mr. Torres began to clean the kitchen. In the course of performing this task, Mr. Stuart rinsed off the hood of the fryer using a pressure washer. Mr. Stuart testified that while he was rinsing underneath the hood, water splattered on the cracked globe and caused it to break. Stuart Dep. at p. 30. Mr. Torres, unsurprisingly, contends that Mr. Stuart did not break the globe while he was pressure-washing the hood and again points to his testimony to the effect that Mr. Stuart told him that the globe must have been already broken when the two men arrived at the restaurant. He also states that it would have been impossible for Mr. Stuart to have broken a globe when he worked on the filters because the filers are on the opposite side of the hood from the globe which cut him, and that he also could not have broken the globe with the power washer because the hood has a lip which safeguards the lights inside the hood. Torres Dep. at pp.45-47.

With respect to the actual accident itself, Mr. Stuart says that he warned Mr. Torres about the broken glass after the pressure-washing problem. He then left to get protective gloves (so he could remove the broken globe) and take a cigarette break. According to Mr. Stuart, when he returned to the kitchen, Torres had injured himself. Mr. Stuart helped Mr. Torres staunch the flow of blood and the men left for the hospital, leaving a trail of blood and bloody rags in their

wake. Mr. Torres received treatment for severed tendons in his arm and has been unable to work steadily due to his injuries.

Mr. Torres alleges that T.G.I. Friday's violated Illinois law by: (a) failing to properly monitor the hood to prevent injuries to persons cleaning the hood; (b) failing to inspect the hood for dangerous or hazardous conditions; (c) failing to warn persons cleaning the hood of an existing dangerous and hazardous condition; (d) failing to provide adequate safety measures to prevent injury to persons cleaning the hood; and (e) failing to properly repair the hood to prevent injury to persons cleaning it.

## II. Discussion

### A. Jurisdiction

The record shows that T.G.I.Friday's is a citizen of Texas and New York. In turn, Mr. Torres is an Illinois citizen, has expressly stated that he is pursuing more than $75,000, and appears to have been severely injured. Thus, jurisdiction is proper. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) (the plaintiff's "estimate of the claim's value must be accepted unless there is 'legal certainty' that the controversy's value is below the threshold").[2]

### B. Standard for A Motion For Summary Judgment

---

[2] With respect to the third-party complaint, at the time of the accident, Facilitec was a wholly owned subsidiary of Ecolab, Inc. The parties state that Ecolab is a Minnesota corporation, but do not provide the location of its principal place of business. *See* 28 U.S.C. § 1332(c)(1) (a corporation is a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business"). This is of no moment, because if a case is properly filed within the diversity jurisdiction and the defendant files a third-party complaint against a resident of the plaintiff's state, jurisdiction over the plaintiff's claim remains secure. *Fidelity and Deposit Co. of Maryland v. City of Sheboygan Falls*, 713 F.2d 1261, 1266 (7th Cir. 1983).

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id*.

### C. Mr. Torres' Negligence Claim

Mr. Torres contends that his injuries flow from T.G.I. Friday's negligence vis-a-vis the fryer hood light globe. A plaintiff alleging negligence has the burden of proving: (1) the defendant owed him a duty of care; (2) the defendant breached that duty of care; and (3) the plaintiff's injuries were proximately caused by the defendant's breach. *See, e.g., Cunis v. Brennan*, 56 Ill.2d 372, 308 (Ill. 1974). T.G.I. Friday's focuses on the third prong, arguing that its allegedly negligent acts or omissions did not proximately cause Mr. Torres' injuries. It also asserts that it cannot be liable because it did not have actual or constructive notice of the allegedly dangerous condition. For the following reasons, the court rejects T.G.I. Friday's arguments as to proximate cause. Nevertheless, the court agrees with T.G.I. Friday's contention that the record fails to show that it had the requisite notice of the purportedly dangerous condition. Accordingly, T.G.I. Friday's is entitled to summary judgment.

### 1. Proximate Cause

There are two types of proximate cause: cause in fact and legal cause. *See, e.g., Abrams v. City of Chicago*, 211 Ill.2d 251, 258 (Ill. 2004). A defendant's conduct is a "cause in fact" of the plaintiff's injury if it "is a material element and a substantial factor in bringing about the injury." *Id*. This is the case where absent that conduct, the injury would not have occurred. *Id*. In contrast, "legal cause" turns on foreseeability. *Id*. Thus, legal cause exists if "the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Id*.

#### a. Cause In Fact

With respect to cause in fact, "[i]f a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury." *Thompson v. County of Cook*, 154 Ill.2d 374, 383 (Ill. 1993). T.G.I. Friday's argues that at best, it is responsible for the fact that the globe was cracked on the night of the accident. It then asserts that the crack in the globe made it possible for the globe to break when Mr. Stuart was pressure washing the hood, but did not independently cause Mr. Torres' accident. Finally, it concludes that because Mr. Torres was injured by a broken globe, not a cracked one, there can be no cause in fact.

The problem with this argument is that it assumes facts which have not been established. The record contains conflicting evidence as to whether Mr. Stuart saw that the globe was cracked during his inspection and told Mr. Torres about the alleged crack. Mr. Torres testified that Mr. Stuart said that a globe was "broken" prior to their arrival at the restaurant on the night of the accident, while Mr. Stuart denies making any such statement. Moreover, Mr. Stuart testified that he broke the globe when he was pressure-washing the hood, while Mr. Torres testified that Mr.

Stuart looked up into the hood after the accident and saw for the first time that the globe was broken. The court obviously cannot pick and chose among these competing facts. Thus, it cannot find that there was no cause in fact at this stage in the proceedings.

### b. Legal Cause

Second, T.G.I. Friday's argues that even if it committed a negligent act or omission by failing to warn Mr. Torres about the presence of a cracked globe, it is still entitled to summary judgment because there is no legal cause since Mr. Stuart's act of actually breaking the globe was an independent intervening act. A "subsequent, independent act" can become "an effective intervening cause" which breaks the causal connection between the defendant's alleged negligence and an accident. *Lundquist v. Nickels*, 238 Ill.App.3d 410, 160-61 (1st Dist. 1992). The court's analysis of cause in fact applies equally to legal cause: the factual dispute about the condition of the globe at the time Mr. Torres arrived at the restaurant means that the court cannot find that there is no legal cause at this stage of the proceedings.

### 2. Notice

T.G.I. Friday's contends that even if proximate cause is an open issue, it is nevertheless entitled to summary judgment because Mr. Torres has failed to point to any evidence indicating that T.G.I. Friday's had actual or constructive notice of the allegedly dangerous condition (the fact that the globe was either cracked or broken before Mr. Torres began to clean the fryer hood on the night of the accident). There is absolutely no evidence in the record which indicates that

T.G.I. Friday's had actual notice that the globe was cracked or broken. Thus, Mr. Torres must show that there is a triable fact as to whether T.G.I. Friday's had constructive notice.[3]

Under Illinois law, constructive notice can be established "under two alternative theories: (1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care, or (2) the dangerous condition was part of a pattern of conduct or a recurring incident." *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988) (internal citations omitted). The only possible way that Mr. Torres can establish constructive notice is by the first method, since the record is devoid of any evidence as to similar injuries caused by problems with lighting in fryer hoods at T.G.I. Friday's.

Mr. Torres does not point to any evidence showing that the cracked or broken globe existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care. Although the court need not scour the record looking for facts supporting Mr. Torres' position, it is clear that the only evidence that might possibly support an inference that T.G.I. Friday's knew about the problem with the globe is Mr. Stuart's testimony indicating that the globe was broken when he and Mr. Torres arrived at T.G.I. Friday's on the night of the accident. Specifically, Mr. Torres testified at his deposition that: (1) Mr. Stuart said that a globe

---

[3] The court takes this moment to acknowledge Mr. Torres' contention that he need not prove that T.G.I. Friday's had constructive notice to withstand summary judgment. This understanding of who carries the burden of showing that a trial is necessary is incorrect. As the Seventh Circuit has explained, "the nonmovant must respond with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. *Vukadinovich v. Board of School Trustees of North Newton School Corp.*, 278 F.3d 693, 668-69 (7th Cir. 2002) (internal quotations and citations omitted). Thus, to survive summary judgment, Mr. Torres must point to evidence showing that T.G.I. Friday's had constructive notice of the allegedly cracked or broken globe in order to reach a jury. *See id.*

was "broken" prior to their arrival at the restaurant on the night of the accident; and (2) Mr. Stuart looked up into the hood after the accident and saw for the first time that the globe was broken.

For the purposes of resolving T.G.I. Friday's motion for summary judgment, the court will assume that these statements were accurate, despite the fact that they are disputed. Even accepting these statements as true, however, Mr. Torres is not entitled to a trial because Mr. Stuart's alleged statements about the globe do not shed on any light on how long the globe had purportedly been cracked or broken before Mr. Torres' accident.

In Illinois, "in a constructive notice case where the plaintiff is relying on the theory that the dangerous condition existed for a sufficient amount of time so that it should have been discovered by the exercise of ordinary care, the time element to establish constructive notice is a material factor." *Culli v. Marathon Petroleum Co.*, 862 F.2d at 123 (collecting Illinois constructive notice cases requiring the plaintiff to establish the amount of time that the dangerous condition existed). Thus, in *Culli*, the plaintiff fell after she slipped on a wet patch at a gas station. The defendants argued that they could not be liable under a constructive notice theory absent any evidence establishing how long the slippery substance was on their property prior to the fall. *Id*.

The Seventh Circuit conducted a detailed survey of numerous Illinois cases analyzing whether a dangerous condition was present for a long enough period of time to put the defendant on constructive notice. *Id*. at 123-126. It then observed that "because of the lack of testimony establishing how long the substance was present, we do not know if the substance was present at the gas station for a period of time which would have placed the defendants on constructive

notice of a dangerous condition. It could have been present for a few minutes or several hours." *Id*. at 126. The *Culli* court thus concluded that the plaintiff had failed to create a triable issue of fact under a constructive notice theory because no evidence established how long the particular substance was present at the gas station. *Id*.

Here, as in *Culli*, there is no evidence pointing to how long the globe may have been cracked or broken prior to Mr. Torres' arrival at the T.G.I. Friday's on the night of the accident. Thus, the court cannot find that a triable issue of fact exists as to whether the dangerous condition existed for enough time so that T.G.I. Friday's should have discovered it by the exercise of ordinary care. *See id*. at 123. To hold otherwise would fly in the face of the oft-repeated rule that " to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." *See, e.g., Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 628 (7th Cir. 2006).

Thus, to sum up, the court sympathizes with Mr. Torres, whose life appears to have changed overnight as a result of the accident with the fryer hood lighting. Nevertheless, he has failed to show that a material issue of disputed fact entitles him to a trial on his negligence claim. Thus, T.G.I. Firday's is entitled to summary judgment as to Mr. Torres' negligence claim.

### III.    Conclusion

T.G.I. Friday's motion for summary judgment [#55] is granted. The court's finding that T.G.I. Friday's is not liable for Mr. Torres' accident means that its third-party claim for contribution against Facilitech can be dismissed. Discovery, which is still ongoing, is hereby

closed and any pending motions are stricken as moot. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.


DATE: December 15, 2006        _____
                               Blanche M. Manning
                               United States District Judge